UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MELITA WILLOUGHBY | : | NO.: 3:14CV608 (JCH) |
| | : | |
| VS. | : | |
| | : | |
| YALE UNIVERSITY | : | SEPTEMBER 17, 2015 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.    **FACTUAL BACKGROUND**

Melita Willoughby, a Yale security officer, contacted Human Resources in late October, 2010 to complain that her reports of sexual harassment and a hostile sexual environment had been dismissed by her supervisors in the Security Department. She had two meeting with a Kristen Albis in Human Resources, on October 29 and November 5; she raised a number of issues concerning adverse working conditions, loathesome obscenities routinely used against her in public by one male security officer (Peter Leonardo) and interference with her personal hygiene belongings. (Ex. 3, plaintiff's affidavit,¶13-14)  Shortly after she raised the issues, she was required to meet with her supervisor, Richard Nucci, at Human Resources to discuss her "communication problems" with the male employee.  She was summoned to a meeting on December 6 at Human Resources and advised that she was being terminated,

since she was still in her three (3) month probationary period as a permanent employee. (Ex. 3, ¶16)

For the two year period prior to gaining the permanent position, Ms. Willoughby had experienced no disciplinary issues and had been eager to work overtime. (Ex. 9, CHRO tapes on CD, 2A, Francisco Ortiz, minute 17:seconds 09, and 17:54)  During the summer of 2009, she attended a Mountain Bike training class offered to security personnel and police officers, and she obtained her certification. (Ex. 8) She was one of the security officers selected to staff the President's Box at Commencement in June, 2010 and was specifically thanked for her assistance by the Office of the Vice President. (Ex. 5) As of September 14, 2010, she became a Residential College Officer and Transit Driver, which involved driving a van and transporting students and staff during the evening shift around the campus and nearby locations in New Haven.

The plaintiff worked for several years in the Security Department at Yale University, first as a casual employee, commencing October 14, 2008 and then as a probationary permanent employee from September 14, 2010 through December 6, 2010. She was one of several female security officers in the department.

A number of other males had applied for the position she obtained in September, 2010, including Brandon McCormick, one of the dispatchers.  The

dispatchers were responsible for taking calls from personnel seeking rides and typing in the work items through the computerized system linking them with screens in the transit vehicles. The system also permitted a dispatcher to locate all of the transit vehicles and determine which driver was closest to a caller seeking transport. (Ex. 9, CHRO fact-finding tapes, 2B, minute 27:20 -29:00, Daniel Killen, Director of Security Operations and Willoughby)

During the fall, while she was driving staff and students, the plaintiff noticed that she was not being given time for breaks during her shift by dispatchers managing the assignments, and that she was sometimes given the wrong address on her MDT screen in the vehicle to pick up transportees. She reported this to at least one supervisor, Paul Gallipoli, but the problem was not solved. (Def. Ex. 1, pps. 71, 73)[1]

Brandon McCormick was one of the dispatchers and was a friend of Peter Leonardo, the security officer who harassed Ms. Willoughby. McCormick applied for the security officer vacancy which was filled by the plaintiff; she received the job offer. (Def. Ex. 1, p. 187)

II.  **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ...show that

---

[1] All page references are to the deposition of 2/10/15

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of N. Y., 72 F.3d 1051, 1060 (2d Cir.1995), Jasco Tools, Inc. v. Dana Corp., 574 F.3d 129, 151 (2d Cir.2009). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Id. (citations omitted). "If reasonable minds could differ as to the import of the evidence ... and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R. B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir.1997) (internal quotation, citation, and alteration omitted), duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion."

Sologub v. City of New York, 202 F. 3d 175, 178 (2d Cir. 2000). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586. (1986) (internal quotation and citation omitted).

In reviewing the evidence and the inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence .... 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' Reeves, 120 S. Ct. 2097 (quoting Liberty Lobby, 106 S. Ct. 2505); see, e.g., Agosto v. INS, 98 S. Ct. 2081 (1978) ("a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"). Kaytor v. Electric Boat Corporation, 609 F. 3d 537 (2d Cir. 2010). "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56(e) Advisory Committee Note (1963).

The Court is required draw all reasonable inferences in the light most favorable to the party opposing the motion. Matsushita, 475 U.S. at 587, Kaytor v. Electric Boat Corporation, 609 F. 3d 537 (2d Cir. 2010).

### III.  ARGUMENT

Plaintiff's retaliation claim, similar to other Title VII employment discrimination claims, is subject to the McDonnell Douglas burden shifting framework. Wimes v. Health, 157 Fed. Appx. 327, 327 (2d Cir.2005), McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973). The plaintiff bears the initial burden of establishing a prima facie case. Texas Dep't of Cmty. Affairs v. Burdine, 101 S.Ct. 1089 (1981). The requirements to establish a prima facie case are "minimal," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and a plaintiff's burden is therefore "not onerous." Burdine, 450 U.S. at 253, 101 S.Ct. 1089. At the second stage, the defendant is required to rebut the presumption created by the prima facie case, the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, [non-retaliatory] reason.' " Hicks,113 S. Ct. 2742 . If the defendant satisfies its burden of production, then "the presumption raised by the prima facie case is rebutted ... and drops from the case." Id.  At the final stage, the plaintiff is required to produce evidence which is sufficient to support a rational finding that the  reasons proffered by the defendant were false and that more likely than not retaliation was the real reason for the employment action. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir.2000). Under the recent Supreme Court Nassar case, the plaintiff must demonstrate that "but

for" her protected activity, I. E., complaints of harassment and a hostile work environment, she would not have been terminated. Univ. of Texas S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2528 (2013).

The plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of retaliatory discharge, i.e.,  (1) she engaged in a protected activity; (2) she was subsequently discharged from her employment; and (3)  there was a causal connection between her participation in the protected activity and her discharge.  La Fond v. General Physics Services Corp., 50 F.3d 165, 172 (2d Cir.1995),  Ritz v. East Hartford, 110 F. Supp.2d 94, 98 (D. Conn. 2000).  After plaintiff makes a prima facie showing, the defendant must produce evidence of a legitimate business reason for the decision to terminate.  At that point, the plaintiff is required to provide circumstantial or direct evidence of pretext, or excuse, by the defendant; she must provide evidence that "but for " her complaint(s) of sexual harassment and/or a hostile work environment, that she would not have been terminated. Nassar, supra.

A plaintiff is not required to prove the underlying discrimination claim in order to establish retaliation, as long as she made the complaint in good faith. Clark County School Dist. V. Breeden, 532 U.S. 268, 270–71 (2001); Harper v. Metropolitan Dist. Com'n., 134 F. Supp. 2d 470, 487 (D. Conn. 2001).

"Proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Manoharan v. Columbia University Co. of Phys. & Surgeons, 842 F.2d 590, 593 (2d Cir.1988). In Jute v. Hamilton Sunstrand, the Second Circuit concluded that there was sufficient evidence to permit the plaintiff to proceed to trial, although the defendant's retaliatory actions took place more than a year after the plaintiff's protected activity. 420 F. 3d 166, 180 (2d Cir. 2005) The plaintiff in that case testified on behalf of another employee in a discrimination case; she was terminated two years later and a job offer from another firm was rescinded after the defendant was contacted for a reference. Id., at 170-71, 179-80.

"A plaintiff may ... establish pretext ...by illuminating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons that would raise doubt in the factfinder's mind that the employer did not act for those reasons." Giscombe v. New York City Dep't of Educ., 39 F. Supp. 3d 396 (S.D.N.Y. 2014) "The Second Circuit has indicated that courts should be particularly sensitive to sex-based hostile environment claims in law enforcement, prisoner or first responder settings where officers must depend on each other for protection and on their own ability to assert authority in potentially dangerous situations." Dawson v. County of Westchester, 373 F. 3d 265, 274 (2d Cir. 2004) "Female officers may be particularly vulnerable

to such diminution of authority in circumstances such as these...because of stereotypical assumptions about the propriety of women exercising authority in traditionally male-dominated occupations." Id., See also, Howley v. Town of Stratford, 217 F. 3d 141, 154 (2d Cir. 2000) [denying summary judgment concerning public dismissal of plaintiff's concerns)

"Proof that the defendant's explanation is unworthy of credence is...one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive....In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Such an inference is consistent with the general principle of evidence law that the fact-finder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 108 (2000), quoting Wright v. West, 505 U.S. 277, 296 (1992).

Ms. Willoughby worked for two years at Yale as a casual employee with no reported problems or discipline of any kind;  Reggie Chavis, one of the supervisors, testified that he had no difficulties working with Ms. Willoughby. (Ex. 9, Side 2B, 31:10) The plaintiff experienced harassment by Peter Leonardo, a co-worker, but she refrained from complaining formally, because she wanted to be selected for permanent employment.  Def. Ex. 1, p. 143.  Once she obtained

9

a permanent position (90 day probationary status) in the fall of 2010, she told her supervisors, Richard Nucci and Paul Gallipoli, about numerous issues she had with Peter Leonardo and Manuel Rivera, one of the dispatchers. (Def. Ex. 1, p. 99) She explained that she was being treated differently from the male officers; she was not getting an opportunity for regular dinner and bathroom breaks. (Def. Ex. 1, p. 71) These reports were certainly recognized by Nucci as complaints, but he interpreted her reports as negativity toward co-workers. (Def. Ex. D, Nucci memo 10/6/15, Ex. 3, plaintiff's affidavit, ¶12) At the end of October, Melita requested a meeting with Human Resources to report the issues she was experiencing, and she gave Kristen Albis the history of incidents with Peter Leonardo (ex: tampon remark at SCSU in summer of 2009) which were evidence of a continuing pattern of hostility on his part toward her. (Def. Ex. 1, p. 173, Ex. 3, ¶¶ 13-14)

Although the plaintiff had received no counseling or reprimands of any kind for the two years she worked as a casual employee, and had received several complimentary e-mails about the quality of her service to the Yale community, she was written up numerous times by supervisors during her probationary period from September 14 - December 6; she was unaware of most of the write ups. (Def. Exs. B, C, E, F, I, Ex. 9, CHRO tapes on CD, 2A, Francisco Ortiz, minute 17:second 09, and 17:54) At least two (2) of the

memoranda were written by supervisors more than a week after the alleged problem incidents (Ex. C and F) Although one of the memos concerned a complaint by a New Haven driver who reported to dispatch that he had been cut off by Ms. Willoughby, after Paul Gallipoli spoke with the driver and the plaintiff, he never followed up with the two students who were terrified by that driver's behavior on George Street; he had their telephone numbers, but did not check with them. (Def. Ex. I) Richard Nucci testified at the CHRO hearing that he was present when the Dean of Davenport College requested assistance from him and the plaintiff to ask nearby students to cut down their music/noise, which was blasting near his small childrens' bedroom.  Nucci did not believe that the plaintiff's communication style with the Dean was a "performance issue" at the time; he described her inquiry to the person who approached them as "a little confrontational".  (Ex. 9, Nucci, Tape 3A, 19:40) Later, these two incidents were magnified by managers to rationalize the plaintiff's termination. (Ex. 9, Tape 2A, 19:23, Francisco Ortiz, manager who terminated plaintiff)

      The plaintiff's complaints about Peter Leonardo's abusive behavior and her difficulty obtaining breaks during her transit evening shift from Manuel Rivera were used as a basis for the negative evaluation she received from Richard Nucci on November 9, shortly after her two meetings with Human Resources to report the harassment.  (Def. Ex. G)

11

Francisco Ortiz, Manager of Security Operations, who terminated the plaintiff on December 6, relied on the write-ups from Richard Nucci and Paul Gallipoli when he made the decision to terminate.  (Ex. 9, Tape 2A, 19:15 - 20:00)  At the time he terminated Ms. Willoughby, he was aware that she had gone to Human Resources a month earlier to complain about sexual harassment and a hostile work environment.  (Ex. 9, Tape 2A, 24:05 et seq.)  He indicated that the fact that she had an "accident" was also significant.   Ms. Willoughby may have glanced a side mirror on an unoccupied vehicle; she was conscientious and called the police to report it; Ortiz testified that this was also a factor in his decision to terminate her.  (Ex. 4, police accident report, Ex. 9, Tape 2A, 27:04 -30)

There is sufficient circumstantial evidence of a causal connection between the time the plaintiff went to Human Resources, that is, *she sought assistance outside of her working group,* to complain of sexual harassment and a hostile work environment, and the pattern of write-ups and a negative evaluation, to raise material issues of fact concerning causal connection and pretext by the defendant employer in its justification of the termination.  Francisco Ortiz testified that he was aware that the plaintiff had made the complaints with Human Resources in late October and early November, 2010 and that employees in his department were being investigated .  (Ex. 9, Tape 2A, 20:06..., 24:20...)

At this stage of the proceedings, all inferences must be drawn in favor of the non-moving party. The plaintiff respectfully requests that the Court deny defendant's motion for summary judgment for the reasons set forth above.

THE PLAINTIFF

*/s/ Katrena Engstrom*
KATRENA ENGSTROM
Federal Bar No. ct09444
51 Elm Street
New Haven, CT 06510
(203) 562-9931
Fax: (203) 776-9494
E-Mail: kengstrom@johnrwilliams.com

**CERTIFICATION**

I hereby certify that on the date set forth above, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

*/s/ Katrena Engstrom*
Katrena Engstrom