UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MELITA WILLOUGHBY | : | NO.: 3:14CV608 |
| | : | |
| VS. | : | |
| | : | |
| YALE UNIVERSITY | : | SEPTEMBER 17, 2015 |

## PLAINTIFF'S RULE 56 (a)(2) STATEMENT

**A.    PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 56(a)(1) STATEMENT**

1.    Disagree.  Plaintiff started her employment at Yale University on 10/14/08. (Ex. 1, Complaint, para. 6 and Ex. 2, first pay stub, 2008.

2.    Agree.

3.    Agree.

4.    Disagree. The plaintiff spoke with Paul Sarno, one of the dispatchers, on the telephone when she arrived for work and took a vehicle.  Sarno, or someone in Dispatch, was supposed to enter her information into the MDT system so that she could receive calls. Exhibit C was written by Thomas Helland six (6) days after the alleged problem occurred. It is unclear what is meant by "could not be located" because no dispatcher, including Brandon McCormick, contacted plaintiff until the call came in from Helland, which the plaintiff responded to. The Yale MDT

system shows the location of all vehicles in use for transit; during the start of that evening shift, one of them would have been visible in the system, based on its GPS coordinates, but not assigned to a particular employee. (Def. Ex. 1, plaintiff's deposition, 2/10/15, pps. 94-97, Ex. 9, Thomas Helland CHRO testimony, Tape 3A, minute 4:00 - 7:00 "plaintiff took the wrong vehicle...error", Tape 3A, 26:45 et seq. Description of MDT system)

5.      Agree in part, disagree in part. Agree that Richard Nucci wrote a lengthy memorandum concerning the plaintiff on 10/6/10. Disagree that plaintiff was rude. (Def. Ex. 1,plaintiff's deposition, 2/10/15,  pps. 86, 207-214, Ex. 3, plaintiff's affidavit, ¶12)

6.      Disagree.  (Def. Ex. 1, p. 92-93, top of p. 94)

7.      Agree that Paul Gallipoli wrote the memorandum, disagree that his conclusion about the misdirection by dispatch was imaginary. The plaintiff notified Paul Gallipoli, as a supervisor, that Manuel Rivera of dispatch was frequently sending her to incorrect addresses to pick up staff and students, as well as not releasing her to take her dinner break and bathroom breaks. (Def. Ex. 1, pps. 71, 85, 87, 98-9)

8.  Disagree. The plaintiff inquired about the identity of the person who approached her complaining about noise at Saybrook. She and the Dean had a useful conversation and Richard Nucci, *who was also present*, contacted the security officer who was responsible for Saybrook to deal

with the issue. At the time, Nucci was not particularly concerned about plaintiff's communication style. (Ex. 9, CHRO fact-finding tapes (Compact Disc), Tape 3A, 18:30-19:50, Nucci testimony)

9.     Agree that on 11/9/10, after plaintiff requested a meeting with Human Resources to report sexual harassment by two employees of the Security Department, Richard Nucci gave the plaintiff a "less than effective" rating for the time period 9/14-10/14. Agree that Nucci wrote the memorandum which is Ex. G to the Killen affidavit. (Ex. 1, pps. 173,183, 191, Ex. 3, para. 13)

10.    Agree.

11.    Disagree.  The plaintiff reported that she believed she brushed the driver side mirror of a parked car on Trumbull Street as she pulled over to drop off passengers. (Def. Ex. 1, pps. 65-71,  Ex. 4)

12.    Agree in part, disagree in part. Gallipoli wrote Exhibit I; Gallipoli failed to contact the two passengers who were terrified of the driver's behavior that evening after he initially signaled to the plaintiff to move to the left lane; both

vehicles were waiting at a red light and she needed to turn left onto George St. After Ms. Willoughby made a left turn with the other driver's permission to do so, he suddenly followed them onto George St., drove recklessly alongside the Yale vehicle, yelling and giving them the finger.

(Ex. 3, ¶18)

13.   Agree that the plaintiff was terminated on December 6, approximately three (3) weeks after her second meeting with Human Resources to complain about a hostile work environment and sexual harassment by Peter Leonardo and Manuel Rivera.  (Ex. 3, ¶¶13-17)

## B.  PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE

1.  The plaintiff was employed as a casual employee with the defendant's Security Department for two years, working an average of forty (40) hours a week and overtime, before she was offered two permanent positions in the department. (Ex. 3, plaintiff's affidavit, ¶¶3-4)

2.     Prior to September, 2010, when her ninety (90) day probationary status commenced as a permanent employee, the plaintiff had no disciplinary record of any kind with the University and she had a good attendance record. (Ex. 3, ¶¶4 - 6, Ex. 9, CHRO tapes on CD, 2A, Francisco Ortiz, minute 17:second 09, and 17:54))

3.     The plaintiff requested two meetings with the defendant's Human Resources Department, on October 29 and November 5, to discuss sexual harassment by Peter Leonardo, a  co-worker in the Security Department. (Ex. 3, ¶¶13-14)

4.     Richard Nucci, plaintiff's new supervisor, gave Ms. Willoughby a negative evaluation on November 9, less than a week after he attended

two meetings at HR with her concerning her sexual harassment allegations. (Def. Ex. G)

5.      The plaintiff reported to Nucci and Kristen Albis, of Human Resources, that Leonardo had called her a "fucking rat bitch", and he had asked her whether she was going to "change her tampon" during a bicycle security training course. (Ex. 3,¶14)

6.      The plaintiff advised Nucci and Albis at the November 5 meeting, that after Leonardo had made the offensive comment at the bicycle training course, that her "personal feminine hygiene products" in her bicycle pack were tampered with. (Ex. 9, Tape 2A, 3:15, Plantiff testimony)

7.      In November, 2010, Richard Nucci warned the plaintiff that it was "unwise" to complain about sexual harassment by co-workers in this "uncertain economy".(Ex. 1, complaint, ¶15)

8.      Thomas Helland produced a memo on October 1, 2010, concerning plaintiff "pulling a key" for the incorrect vehicle and the failure of Ms. Willoughby to contact dispatch for two hours at the beginning of the September 25 evening shift - he wrote the memorandum more than a week after the alleged "incident" occurred; his testimony at the CHRO nullified and was inconsistent with his summary in the memorandum to

Richard Nucci, Paul Gallipoli, copied to Daniel Killen and Francisco Ortiz. (Def. Es. C and G (negative evaluation) vs. Ex. 9, Tape 3A, 4:00 - 7:00)

9.     The Security Department received at least three (3) e-mails from enthusiastic students and employees concerning the plaintiff's service at Yale, including one from the Office of the Vice President and Secretary after the plaintiff worked in the President's Box during Yale's commencement ceremony in May, 2010.  (Exs. 5-7)

10.    Francisco Ortiz, manager of Security Operations, relied on the write-ups by his managers, Nucci, Gallipoli and Helland, to justify his decision to terminate the plaintiff.  (Ex. 9, Ortiz, Tape 2A, 19:23)

11.    Francisco Ortiz was aware that the plaintiff had requested meetings with Human Resources to report sexual harassment and a hostile working environment.  (Ex. 9, Ortiz, Tape 2A, 24:05 et seq.)

12.    Although one of the manager memos from Paul Gallipoli concerned a complaint by a New Haven driver who reported to dispatch that he had been cut off by Ms. Willoughby, after Paul Gallipoli spoke with the driver and the plaintiff, he never followed up with the two students who were terrified by that driver's behavior on George Street; he had their telephone numbers, but did not check with them. (Def. Ex. I)

THE PLAINTIFF


_____/s/   Katrena Engstrom_____
KATRENA ENGSTROM
Federal Bar No. ct09444
51 Elm Street
New Haven, CT 06510
(203) 562-9931
Fax:  (203) 776-9494
E-Mail: kengstrom@johnrwilliams.com




**CERTIFICATION**

   I hereby certify that on the date set forth above,  a copy of foregoing  was filed
electronically. Notice of this filing will be sent by e-mail to all parties by operation of
the court's electronic filing system or by mail to anyone unable to accept electronic
filing.  Parties may access this filing through the Court's system.


                      _/s/ Katrena Engstrom__
                       Katrena Engstrom

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MELITA WILLOUGHBY          :          NO.: 3:14CV608 (JCH)
                           :
VS.                        :
                           :
YALE UNIVERSITY            :          SEPTEMBER 17, 2015


**PLAINTIFF'S EXHIBIT LIST RE:  OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**


1.     Federal Complaint

2.     Plaintiff's 10/08 pay stub

3.     Plaintiff's affidavit

4.     Police Accident Report, Trumbull St., 11/12/10

5.     E-mail from Office of Vice President, Lauralee Field, 6/22/10

6.     E-mail from Maria Macalla to Dan Killen, 5/19/09

7.     E-mail from Danica Kelly to Dan Killen, 10/31/2008

8.     Plaintiff's Certification, Mountain Bike Basic Training Course, Int'l. Police
       Mountain Bike Association, 7/09

9.     CHRO fact-finding interviews, Compact Disc, Willoughby v. Yale
       University, Case No. 1130482, 11/20/12

       CD has Tapes 1-3, with side A and B for each

       **Tape 1A and 1 B**

               Melita Willoughby

**Tape 2A**

    Melita Willoughby

    15:30   (Minute 15, second 30) Francisco Ortiz

    39:47 Paul Gallipoli

**Tape 2B**

    Gallipoli cont'd

    27:20   Daniel Killen re: MDT system

    29:05   Melita Willoughby re: MDT system

    30:31   Reggie Chavis

**Tape 3A**

    Chavis cont'd

    2:20   Thomas Helland

    12:11   Richard Nucci

    24:57   Kristen Albis

    33:43   Melita Willoughby

    36:18   Nucci cont'd

**Tape 3B**

    Nucci cont'd

    1:06   Kristen Albis Maloney

    11:35 Daniel Killen

14:34 Kristen Albis Maloney

16:50  Daniel Killen


THE PLAINTIFF


_/s/ Katrena Engstrom_
KATRENA ENGSTROM
Federal Bar No. ct09444
51 Elm Street
New Haven, CT 06510
(203) 562-9931
Fax:  (203) 776-9494
E-Mail: kengstrom@johnrwilliams.com


**CERTIFICATION**

I hereby certify that on the date set forth above, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.  Exhibit 9 was filed manually and a duplicate was mailed, first class postage, to counsel for defendant.


_/s/ Katrena Engstrom_
Katrena Engstrom

# EX. 1

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MELITA WILLOUGHBY             :      CIVIL NO.: 3:14CV608 (JCH)

VS.                          :

YALE UNIVERSITY              :      MAY 5, 2014

## C O M P L A I N T

1.   This is an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, to redress the deprivation by the defendant of rights secured to the plaintiff by the laws of the United States.

2.   Jurisdiction of this court is invoked under the provisions of Sections 1331 and 1343(3) of Title 28 and Section 2000e of Title 42 of the United States Code.

3.   During all times mentioned in this action, the plaintiff was, and still is, an adult citizen of the United States residing in the State of Connecticut.  She is a female.

4.   During all times mentioned in this action, the defendant was and is an educational corporation chartered by the State of Connecticut.  It is and at all relevant times was an employer within the meaning of the aforesaid statutes and

1

at all relevant times employed more than one hundred individuals.

5.  The plaintiff has complied with all of the procedural prerequisites to suit under the statutes aforementioned, having filed a timely complaint of discrimination with the United States Equal Employment Opportunity Commission on or about May 25, 2011, and having received a Right to Sue Letter issued by the said Commission on April 23, 2014.

6.  The plaintiff was hired by the defendant's security department as a casual employee on October 14, 2008.

7.  The plaintiff thereafter consistently worked a 40-hour-per-week schedule and additionally worked overtime when requested to do so.

8.  The plaintiff had perfect work attendance, did not take any unauthorized time off from work, was never verbally reprimanded and never had any written warnings in her personnel file.

9.  Security Operations Assistant Director Daniel Kellen personally chose the plaintiff to assist the defendant's President's Box for assigned seating and security for the special guest attending the 2010 Commencement.  Her professionalism during that assignbment was acknowledged by Lauralee Field, Assistant Secretary, Office of the Vice President.

10.  The plaintiff's position was changed from casual employee to full-time permanent employee on or about September 14, 2010.

11.  After September 14, 2010, the plaintiff was required by her position to work evening hours in an all-male culture.

12.  Two male transit dispatchers named Manuel Rivera and Edward Fusco could not accept the fact that the plaintiff was a female and consistently subjected the plaintiff to rude and inappropriate remarks and to disparate treatment such as being denied dinner breaks, restroom breaks or the state-mandated fifteen-minute break.

13.  The plaintiff complained about the aforesaid gender-based hostility to Supervisor Richard Nucci on multiple occasions.  Nucci listened to recordings of radio transmissions which confirmed the plaintiff's allegations.

14.  A male security officer named Peter Leonardo subjected the plaintiff to severe sexual harassment.  Among other things, he called her a "fucking rat-bitch."  When she took a bathroom break, he shouted at her, in front of a group of male officers: "Are you going to change your tampon?"  When she returned from her break, she discovered that her intimate personal belongings had been opened and tampered with.  She complained about these matters to her then-supervisor, Billy Abbott, who alerted Assistant Director Daniel Killen.  Later, when she repeated her complaint to Supervisor Nucci, he cut her off and told her he did not want to hear about anything that happened before he became Supervisor.  Nucci was a close friend of Peter Leonardo.

3

15.  In November 2010, Supervisor Nucci told the plaintiff that she should not be making complaints about harassment in an uncertain economy and while on probation for her permanent position.  Shortly thereafter, the plaintiff met with Human Resources Generalist Kristen Albis to repeat her complaint of gender discrimination and, over her objection, Supervisor Nucci sat in on the meeting.

16.  The defendant terminated the plaintiff's employment on December 6, 2010, two weeks after the meeting with Albis and Nucci.

17.  As an excuse, the defendant cited a minor motor vehicle accident involving the plaintiff. Several other security officers, employed by the defendant and similarly situated to the plaintiff, were involved in comparable or worse accidents and were not terminated.  Those officers include Judith Ocasio-Rivera, Cruz Costello and George Fusco.

18.  The excuse offered by the defendant for terminating the plaintiff was false and a pretext for unlawful retaliation.

19.  In the manner described above, the defendant terminated the plaintiff's employment in retaliation for her complaints about sexual harassment and discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

20.  As a result, the plaintiff has suffered economic losses and emotional distress.

4

WHEREFORE, the plaintiff claims judgment against the defendant as follows:

A.  Compensatory damages in an amount this court shall consider to be just, reasonable and fair;

B.  Punitive damages in an amount this court shall consider to be just, reasonable and fair;

C.  Attorney fees and the costs of this action;

D.  A temporary and permanent injunction requiring the defendant forthwith to restore the plaintiff to her former position with full retroactive pay and benefits;

E.  Such other relief as this court shall consider to be fair and equitable.

**The plaintiff claims trial by jury.**

THE PLAINTIFF


BY:_____     /s/     (ct00215)_____
            JOHN R. WILLIAMS (ct00215)
            51 Elm Street
            New Haven, CT 06510
            203-562-9931
            Fax:  203-776-9494
            jrw@johnrwilliams.com
            Her Attorney

5

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MELITA WILLOUGHBY          :          NO.: 3:14CV608 (JCH)

VS.                        :

YALE UNIVERSITY            :          MAY 5, 2014

# A P P E A R A N C E

Please enter the appearance of JOHN R. WILLIAMS, 51 Elm Street, New

Haven, Connecticut 06510; Telephone: 203.562.9931; Facsimile: 203.776.9494;

Email: jrw@johnrwilliams.com; Federal Bar No. ct00215; on behalf of the plaintiff

in this matter.


THE PLAINTIFF


BY:  _____/s/_____
     JOHN R. WILLIAMS
     Federal Bar No. ct00215
     51 Elm Street
     New Haven, CT 06510
     (203) 562-9931
     Fax: (203) 776-9494
     E-Mail: jrw@johnrwilliams.com

# EX.  2

| Period Ending: 10/18/2008 | Yale University Employee's Statement Of Earnings And Deductions | Check Date: 10/23/2008 |

MELITA A. WILLOUGHBY

Employee Identification No:              110296
University Personal Identifier (UPI):    13081420

Home          466 Carrington Rd
Address:      Bethany, CT 06524

Campus        Mail Code:
Address:

| Type of Earnings | Hours | Rate | Total |
|---|---|---|---|
| Time Entry Wage | 32.000 | 15.920 | 509.44 |

Taxes

Federal: Married, 0 Exemptions                                                       Weekly (R)
State(CT)    "A" - Married or Civil Union, Combined Income <= 100,500    Addl Amt    0.00
FICA Social Security    Limit    102,000.00    YTD    509.44    Addl Red    0.00
FICA Medicare    2008 Limit    <none>    YTD    509.44

| | Curr Period Cash Gross | Year To Date Cash Gross | Curr Period Taxable | Year To Date Taxable |
|---|---|---|---|---|
| Time Entry Wage | 509.44 | 509.44 | 509.44 | 509.44 |
| ** TOTAL | 509.44 | 509.44 | 509.44 | 509.44 |

| | Curr Period Cash Gross | Year To Date Cash Gross | Curr Period Taxable | Year To Date Taxable |
|---|---|---|---|---|
| Federal | 38.39 | 38.39 | | |
| FICA - Medicare 1.45% | 7.39 | 7.39 | | |
| FICA - Social Security 6.2% | 31.59 | 31.59 | | |
| State(CT) | 11.42 | 11.42 | | |
| ** SUB TOTAL Taxes | 88.79 | 88.79 | | |

| | Curr Period Cash Gross | Year To Date Cash Gross | Curr Period Taxable | Year To Date Taxable |
|---|---|---|---|---|
| ** TOTAL Deductions | 88.79 | 88.79 | | |

| | Curr Period Cash Gross | Year To Date Cash Gross | Curr Period Taxable | Year To Date Taxable |
|---|---|---|---|---|
| Net Pay | 420.65 | 420.65 | | |
| Total Dollars | 420.65 | 420.65 | | |
| Federal/State Taxable Pay | | | 509.44 | 509.44 |

MELITA A. WILLOUGHBY

Employee Identification No:        110296
University Personal Identifier (UPI):      13081420

Home        466 Carrington Rd
Address:    Bethany, CT  06524

Campus      Mail Code:
Address:

| Type of Earnings | Hours | Rate | Total |
|---|---|---|---|
| Overtime | 0.500 | 23.880 | 11.94 |
| Time Entry Wage | 40.000 | 15.920 | 636.80 |

Taxes                                                                    Weekly (R)
Federal: Married, 0 Exemptions
State(CT)      "A" - Married or Civil Union, Combined Income <= 100,500        Addl Amt    0.00
FICA Social Security     Limit     102,000.00          YTD    1,158.18        Addl Red    0.00
FICA Medicare       2008 Limit      <none>          YTD    1,158.18

| | Curr Period Cash Gross | Year To Date Cash Gross | Curr Period Taxable | Year To Date Taxable |
|---|---|---|---|---|
| Overtime | 11.94 | 11.94 | 11.94 | 11.94 |
| Time Entry Wage | 636.80 | 1,146.24 | 636.80 | 1,146.24 |
| ** TOTAL | 648.74 | 1,158.18 | 648.74 | 1,158.18 |

| | | | | |
|---|---|---|---|---|
| Federal | 59.28 | 97.67 | | |
| FICA - Medicare 1.45% | 9.40 | 16.79 | | |
| FICA - Social Security 6.2% | 40.22 | 71.81 | | |
| State(CT) | 24.00 | 35.42 | | |
| ** SUB TOTAL Taxes | 132.90 | 221.69 | | |

| ** TOTAL Deductions | 132.90 | 221.69 | | |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| Net Pay | 515.84 | 936.49 | | |
| Total Dollars | 515.84 | 936.49 | | |
| Federal/State Taxable Pay | | | 648.74 | 1,158.18 |

Non-Negotiable Bank Deposit Slip

# YALE UNIVERSITY
### NEW HAVEN, CONNECTICUT

Advice No.
012447826

Pay      Five Hundred Fifteen Dollars And 84 Cents*******************************************
Date     10/30/2008

**Amount**

$515.84

Non-Negotiable Bank Deposit Slip

Credit to the Account of      MELITA A. WILLOUGHBY
                               466 CARRINGTON RD
                               BETHANY, CT 06524

# EX. 3

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

MELITA WILLOUGHBY             :

VS.                                 :       NO. : 3:14CV608 (JCH)

YALE UNIVERSITY              :       SEPTEMBER 17, 2015

County of New Haven     )

                           ) ss:

City of New Haven        )

## PLAINTIFF'S AFFIDAVIT

I, MELITA WILLOUGHBY, having first been duly sworn, hereby state:

1.     I am over the age of eighteen and I understand the obligations of an oath.

2.     I have a background in security work and prior to my employment with Yale University ("Yale") I worked as a security guard at federal buildings in Hartford and New Haven, CT, as an employee of SecTec, Inc. for approximately five (5) years.

3.     In October, 2008, I started work as a casual employee for forty (40) hours a week in the Security Department at Yale, plus overtime, which meant that I was paid an hourly wage with no benefits and could be terminated at any time for any reason.

4.      For the two years before I was offered a regular position as a security guard in the Security Department, with a ninety (90) day probationary period, I was not counseled by any supervisor for work related problems.

5.      In the spring of 2010, I was selected to staff the President's Box at the Commencement ceremony. (Ex. 5)

6.      I was included in several "thank you" e-mails to the Security Department for my work from 2008-2010; I was assigned to patrol the Science Park area, the Canal path leading to it and another assignment was the new Yale Health Services near Science Park while the building was under construction. (See Exs. 5-7)

7.      During the summer of 2009, I participated in a Mountain Bike Basic Training Course for Yale security personnel and police officers and I received a certificate of completion. (Ex. 8)

8.      I experienced problems with Peter Leonardo, another security officer, in 2008 and 2010,  but I did not report him to Human Resources until October 29, 2010, when I met with Kristen Albis in that department; I wanted to become a full time permanent employee and I believed that if I complained, I would not be offered a permanent position with Yale.

9.       For example, during the bike training class at Southern Connecticut State University (summer 2009), Peter Leonardo yelled in front of other officers, "Are you going to change your tampon?"

10.     My feminine hygiene products in my bike pack were also tampered with
        that day and I believe that Pete Leonardo was responsible for that activity.

11.     In October, 2010, Pete Leonardo approached me and a friend, Millicent
        Bowens, in a threatening manner while we were stopped on our
        motorcycles at a light in New Haven and I was off duty.  He walked around
        us, glaring and said nothing to us.

12.     I told Richard Nucci about Leonardo's abusive behavior during the fall of
        2010 and he dismissed it. Peter Leonardo's use of obscenities to refer to
        me did not change during the fall of 2010, while I was a probationary
        employee.

13.     I met with Kristen Albis on October 29 and November 5 to the best of my
        memory to discuss my concerns; I was surprised that she included
        Richard Nucci in the meetings.

14.     I reported several instances of sexual harassment and a hostile work
        environment to Kristen Albis at the meetings.  I told her that Leonardo
        referred to me as a "fucking rat bitch", yelled at me from Yale vehicles,
        and often sat in the dispatch office; I believe that he encouraged dispatch
        to send me to incorrect addresses for transit pickups. I related the SCSU
        incident concerning the remark about the tampon and the rifling of my bike
        pack and hygiene products. I told her about Manuel Rivera's failure to give
        me regular breaks for dinner and to use the bathroom while I was driving

on the evening shift. (Ex. 9, plaintiff testimony, Tape 1B, 30:30 - 32:00, Tape 2A, 2:30-3:20)

15.   Shortly after my meetings with Kristen Albis, on November 9, I received a negative employee performance evaluation from Richard Nucci, my supervisor.

16.   On December 6, I was called to report to Human Resources. I met with Daniel Killen, Francisco Ortiz and Kristen Albis and I was informed that I was being terminated.

17.   I believe that I was terminated because I raised issues of sexual harassment and a hostile work environment with Human Resources on October 29 and November 5, after my reports to Richard Nucci were disregarded and he failed to adequately discipline Peter Leonardo.

18.   Paul Gallipoli, another supervisor I worked for, contacted a "Major Nelson" twice to ask about his version of an incident on Temple Street on November 19, 2010; he had the names and telephone numbers of the Yale students who were passengers in my vehicle and were terrified by that driver, but he did not contact them for details. (Exs. I and J) That evening, I was in the middle lane at a red light on Temple and needed to make a left turn on to George Street that evening. Nelson motioned for me to go ahead of him when I signaled to him. After I made the turn, suddenly, Nelsen drove up beside our van, was giving me the finger and angrily gesturing for me to pull over. The passengers told me not to stop

the van and offered to give accounts if anyone wanted to contact them. To the best of my knowledge, no manager contacted the students to learn what happened with Nelson that evening.

MELITA WILLOUGHBY

Katrena Engstrom

Comm. Of Superior Court

# EX. 4

# CONNECTICUT UNIFORM POLICE ACCIDENT REPORT   FORM PR-1 REV. 01/01

**GPS READINGS:** Latitude:

Time:                Longitude:

**FOR DOT USE ONLY**
POLICE CASE NUMBER
10-70302

| DATE OF ACCIDENT | MILITARY TIME | ACCIDENT SEVERITY | # VEHICLES INVOLVED | PAGE # |
|---|---|---|---|---|
| 11/12/10/25 | | ☐ Fatal ☐ Injury ☑ PDO | 2 | 1 of 2 |

TOWN OR CITY NAME: New Haven    TOWN CODE: 0913    ACCIDENT OCCURRED ON (Street Name or Route #): Trumbull St.    AT ITS INTERSECTION WITH (Street Name or Route #): of

IF NOT AN INTERSECTION
1. MEASURE DISTANCE    ☐ Feet  ☐ Tenths of Mile  ☐ Meters  ☐ Kilometers
(✓ Check Appropriate Boxes)

2. DIRECTION  ☐ North  ☐ South  ☐ East  ☐ West

3. NAME OF NEAREST INTERSECTING STREET, TOWN LINE OR MILE MARKER
of

Accident Occurred on: ☐ On Private Property  ☐ Parking Lot

---

| TRAFFIC UNIT #1 | ☑ Vehicle  ☐ Pedestrian  ☐ Non-Contact Vehicle | TRAFFIC UNIT #2 | ☑ Vehicle  ☐ Pedestrian  ☐ Non-Contact Vehicle |
|---|---|---|---|

OPERATOR #1 or PEDESTRIAN NAME (Last, First, Middle Initial): Willoughby, Melita A

OPERATOR #2 or PEDESTRIAN NAME (Last, First, Middle Initial): Mulholland, Anne M

ADDRESS (Street Number & Name): 466 Carrington Rd.    PROPER LICENSE CLASS ☑ Yes ☐ No

ADDRESS (Street Number & Name): 31 South Oak St.    PROPER LICENSE CLASS ☑ Yes ☐ No

CITY OR TOWN: Bethany    STATE: CT    ZIP CODE: 06524    SEX ☐ M ☑ F

CITY OR TOWN: East Haven    STATE: CT    ZIP CODE: 06512    SEX ☐ M ☑ F

OPERATOR LICENSE #: 014438934    STATE: CT    DATE OF BIRTH: 01/02/63

OPERATOR LICENSE #: 234791737    STATE: CT    DATE OF BIRTH: 11/08/60

OWNER'S NAME (Enter SAME if Owner is Operator): Yale University

OWNER'S NAME (Enter SAME if Owner is Operator): Same

ADDRESS (Street Number and Name):

ADDRESS (Street Number and Name): Same

CITY OR TOWN: New Haven    STATE: CT    ZIP CODE: 06520    BODY TYPE: Util

CITY OR TOWN: East Haven    STATE: CT    ZIP CODE: 06512    BODY TYPE: 4d Sed

REGISTRATION #: 57CM72    STATE: CT    VEHICLE YEAR AND MAKE: 08 Honda CRV

REGISTRATION #: 578 WWC    STATE: CT    VEHICLE YEAR AND MAKE: 04 Honda

VEHICLE IDENTIFICATION NUMBER: 1HLRE483 3BC037510

VEHICLE IDENTIFICATION NUMBER: 1HGCM5668 4A122522

CARRIER NAME:

CARRIER NAME:

CARRIER ADDRESS (#, Street, City or Town, State, Zip Code):

CARRIER ADDRESS (#, Street, City or Town, State, Zip Code):

SOURCE OF CARRIER NAME  ☐ Shipping Papers/Trip Manifest  ☐ USDOT #  ☐ Driver  ☐ Side of Vehicle  ☐ ICCMC #

SOURCE OF CARRIER NAME  ☐ Shipping Papers/Trip Manifest  ☐ USDOT #  ☐ Driver  ☐ Side of Vehicle  ☐ ICCMC #

GROSS VEHICLE WEIGHT RATING #:    HAZARDOUS MATERIAL PLACARD  REQUIRED? ☐ Yes ☐ No 4 Digit #  DISPLAYED? ☐ Yes ☐ No 1 Digit #

GROSS VEHICLE WEIGHT RATING #:    HAZARDOUS MATERIAL PLACARD  REQUIRED? ☐ Yes ☐ No 4 Digit #  DISPLAYED? ☐ Yes ☐ No 1 Digit #

HAZARDOUS CARGO RELEASED? ☐ Yes ☐ No    ENFORCEMENT ACTION TAKEN  ☐ None ☐ Arrest ☐ Written Warning ☐ Verbal Warning

HAZARDOUS CARGO RELEASED? ☐ Yes ☐ No    ENFORCEMENT ACTION TAKEN  ☐ None ☐ Arrest ☐ Written Warning ☐ Verbal Warning

STATUTE OR ORDINANCE #'S    SUBJECT OF ACTION ☐ Operator ☐ Carrier ☐ Owner ☐ Pedestrian

STATUTE OR ORDINANCE #'S    SUBJECT OF ACTION ☐ Operator ☐ Carrier ☐ Owner ☐ Pedestrian

AUTOMOBILE INSURANCE — NAME — POLICY #: Self Insured 70110

AUTOMOBILE INSURANCE — NAME — POLICY #: Travelers Home and Marine 999978392

PARTS OF VEHICLE DAMAGED: Right Rearview Mirror / Passenger Side

PARTS OF VEHICLE DAMAGED: Front Fender

VEHICLE TOWED TO:    ☐ TOWED DUE TO DAMAGE

VEHICLE TOWED TO:    ☐ TOWED DUE TO DAMAGE

---

| | L. | M. | N. | NAME AND ADDRESS OF EACH INVOLVED PERSON | Date of Birth | O. | P. | Q. | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | N | 01 | TRAFFIC UNIT #1 OPERATOR OR PEDESTRIAN #1 | | 9 | 2 | 1 | |
| 2 | | | | TRAFFIC UNIT #2 OPERATOR OR PEDESTRIAN #2 | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |

ALL INVOLVED PERSONS

Vehicle Operator # 1 stated that she was traveling west bound on Trumbull St. and was avoiding traffic and accidentally scraped up against Vehicle Operator #2's vehicle. Vehicle Op#1 stated that her passenger side mirror rub against Vehicle Op#2's driver's side door rear view mirror. Vehicle Op#1 also stated that she rubbed up against Vehicle Op#2's fender.

Vehicle Op#2 did not witness the accident.

Vehicle Op#1 was determined to be at fault. She was not injured.

Nothing further at this time.

| DAMAGE TO PROPERTY OTHER THAN INVOLVED VEHICLES | 1. DESCRIBE THE NATURE AND EXTENT OF PROPERTY DAMAGE |
| | NAME AND ADDRESS OF PROPERTY OWNER |
| | 2. DESCRIBE THE NATURE AND EXTENT OF PROPERTY DAMAGE |
| | NAME AND ADDRESS OF PROPERTY OWNER |

| RANK AND SIGNATURE OF INVESTIGATING OFFICER | OFFICER ID# | POLICE AGENCY IDENTIFICATION | REPORT DATE | CASE STATUS | SUPERVISOR |
|---|---|---|---|---|---|
| | | | | OPEN | |

# EX. 5

| | |
|---|---|
| **Date:** | Tue, 22 Jun 2010 17:13:50 -0400 [06/22/2010 05:13:50 PM EDT] |
| **From:** | "Field, Lauralee" <lauralee.field@yale.edu> |
| **To:** | "'melita.willoughby@yale.edu'" <melita.willoughby@yale.edu> |
| **Cc:** | "Ortiz, Francisco" <francisco.ortiz@yale.edu>, "Lindner, Janet" <janet.lindner@yale.edu>, "Maffei, Rick" <richard.maffei@yale.edu> |
| **Subject:** | Thank you! |

🔗 2  unnamed  [text/html]  4.60 KB

Dear Melita,

Before I left for vacation last week, I held a de-briefing with all of our Commencement volunteers. Those volunteers (aka "grownups") assigned to the President's Box were unanimous in saying what a terrific job you did. They cited your gracious professionalism and asked me to request your assignment at the President's Box next year.

We shine by your reflected glory and are grateful for your outstanding work.


Sincerely,

Lauralee Field


Assistant Secretary

Office of the Vice President & Secretary

P.O. Box 208230

New Haven, CT  06520-8230

203 432-2317 (phone)

203 432-8465 (fax)

# EX. 6

**Smith, James**

**From:** Killen, Daniel
**Sent:** Wednesday, May 20, 2009 2:51 PM
**To:** Cervone, Robert; Smith, James
**Subject:** FW: Melita Willoughby

FYI.

**From:** MacCalla, Maria
**Sent:** Tuesday, May 19, 2009 10:20 PM
**To:** Killen, Daniel; 'george.alyward@yale.edu'
**Subject:** Melita Willoughby

Dear Mr. Killen and Mr. Alyward,

I wanted to take a moment to write a note about Melita Willoughby, one of the officers at Science Park.  Like many of my colleagues, I was very concerned last year, to have to come to work at my present location due to the elevated level of crime in this area.  However, to my great satisfaction, Melita has offered a constant source of protection and watchfulness to this vicinity since our arrival.  On occasions where I've had to park on the street for appointments and fearfully leave after dark, she has walked me to my vehicle and stayed to be sure I got in safely.

Her sunny disposition and genuine care for people is second to none.  I think I speak not only for myself, but for many of the staff at 25 Science Park when I say that she is a truly valuable member of the Yale Security team. I hope to continue to utilize her services while remaining in this area.  I know that she can be counted on to be professional, courteous, and most of all, fearless in her position; and that's just what we need in this neighborhood!

Thank you very much for your time,
Maria Maccalla


Maria Maccalla
Financial Analyst
Funds Management
25 Science Park
150 Munson Street, 6th Floor
New Haven, CT  06511
203-436-8357
maria.maccalla@yale.edu

5/20/2009

# EX. 7

## Kelly, Danica

| | |
|---|---|
| **From:** | Kelly, Danica |
| **Sent:** | Friday, October 31, 2008 3:18 PM |
| **To:** | Killen, Daniel |
| **Subject:** | Security Officers at 25 Science Park |

Good Afternoon Mr. Killen —

I am a new resident here at 25 Science Park, working within the Finance & Administration unit on the 6th floor. I had the pleasure of meeting you at the "Welcome Meeting" a few weeks back. I wanted to take this time to let you know how extremely impressed I am with the level of service that you and your team of officers have been providing since my arrival just two weeks ago. Since arriving at my new facility, I have had the pleasure of personal escorts to/from the building to my assigned parking lot (Lot F), cheerful greetings every morning and sincere good byes every evening and a host of assured remarks and comments from officers at their assigned posts always willing to assist and making themselves very visible which in turn, made me feel secure.

In my role, here at Yale, I report directly to the University's CFO, Ms. Gwendolyn Sykes. Ms. Sykes is often on the go, back and forth to meetings, speaking engagements, etc. A major concern upon our re-location was her constant traveling and her late schedule. I have to say, your officers have made both issues much more enduring.

Ms. Sykes and I, wanted to personally recognize two of your officers for their personable, courteous and professional attitudes while posted here at 25 SP.
Dirk Morra and Melita Willoughby were two officers who personally assisted Ms. Sykes and I by offering their assistance, coordinating with their fellow officer and ultimately resolving the issue. Their quick response, helpful solution and coordination was seamless and although, our issues were not life threatening, the impact your officers had on our situation was just as memorable.

I wanted to personally take the time to say, Thank you.

Danica Kelly
Assistant Administrator

Office of Chief Financial Officer
YALE | Finance and Administration
2 Whitney Avenue, New Haven, CT 06520
Office: (203) 432 1335 | Direct: (203) 436 8353  Fax:   (203) 436 3906 | http://www.yale.edu/fa/

# EX. 8



Southern Connecticut State University Police Department

International Police Mountain Bike Association Training Course

hereby certifies that

**Melita Willoughby**

has completed the

**INTERNATIONAL POLICE MOUNTAIN BIKE BASIC TRAINING COURSE**

and is hereby awarded this

**Certificate of Completion**

in accordance with

**I.P.M.B.A. Standards**

On this ___9th___ Day of ___July___ , 2009

SIGNATURE: _____

INSTRUCTOR: ___Tom Madera #384___

DEFENDANT'S EXHIBIT

PENGAD 800-631-6989

# EX. 9

# CD of CHRO Fact-Finding Investigation Tape 11/20/12